Fred D. Newman v. Commissioner.
Newman v. Commissioner
Docket No. 28955.
United States Tax Court
1952 Tax Ct. Memo LEXIS 95; 11 T.C.M. (CCH) 908; T.C.M. (RIA) 52267; August 29, 1952
*95 1. Sums spent for gratuities made in violation of state law disallowed as ordinary and necessary business expense. 2. Portion of rental and redecoration costs allocable to business use of apartment determined. 3. Reasonable salary allowance for services rendered to petitioner by his wife determined. Walter L. Mims, Esq., 506 Massey Bldg., Birmingham, Ala., and Frank Bainbridge, Esq., for the petitioner. S. Earl Heilman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $11,260.97 in the petitioner's income tax liability for the taxable year ended December 31, 1944. The petitioner alleges as error the respondent's disallowance of several deductions and the addition of an item of income. Findings of Fact The petitioner is an individual residing in Jefferson County, Alabama. His income tax return for 1944 was filed with the collector of internal revenue for the district of Alabama. During 1944 the petitioner rented an apartment in Birmingham, Alabama, for $55 per month, consisting of two bedrooms, a living room, dining room, sun parlor, porch, kitchen and bath. The apartment was *96 at all times occupied as a residence by the petitioner and his wife and during part of the year by his wife's sister. The petitioner also used part of the apartment to conduct his business affairs and kept in it a desk, filing cabinet, credenza, and three chests, all of which were used as office equipment. Mail, telephone calls and visirtors pertaining to the petitioner's business were received in the apartment and business was transacted there. Two rooms were needed to house the equipment in such a manner as to leave sufficient space for the conduct of the petitioner's business. In 1944 the petitioner spent $660 for rental of the apartment and approximately $275 to refinish the floors and paint the entire apartment. Two hundred and twenty dollars of the rental expenditure and $92 of the refinishing and painting expenditure are allocable to the business use of the apartment and constitute ordinary and necessary business expenses. During the period July 1 to December 31, 1944, inclusive, the petitioner paid his wife $400 per month for secretarial services. Payment was made in cash and on no particular date but approximately at the beginning of every month. The petitioner withheld *97 Social Security deductions but did not withhold Federal income taxes on the sums paid to his wife. Petitioner's wife had been employed by several companies prior to employment with the petitioner. From January 1943 to May 1944, she was employed by a corporation in Alabama as head of the salary payroll department for $225 per month for a 40-hour week, plus overtime. Prior to and after the year 1944, the petitioner was not as much in need of a secretary as he was in 1944 and depended upon public stenographers. During 1944 the petitioner traveled much more than at any other time in an effort to locate whiskey and rum suppliers who would sell to the Alcoholic Beverage Control Board of Alabama (hereinafter referred to as the Board) and who would employ him as their Alabama representative to advertise and promote the product. By the end of 1944, the petitioner's business was satisfactorily established. The petitioner's gross income in 1944 was approximately $60,000. In 1943 it was approximately $6,000 to $7,000 and in 1945 it was less than $10,000. A reasonable salary allowance for the services rendered to the petitioner by his wife in 1944 was not in excess of $600. In 1944 the *98 sale of Balboa rum began in the State of Alabama. The petitioner, as Alabama representative, introduced the product and promoted its sale by giving bottles of rum to potential purchasers such as customers of state liquor stores and of licensees (i.e., restaurants, hotels and clubs) and others planning weddings, conventions and banquets. He did this to acquaint them with Balboa rum and with the hope that they would thereafter purchase it. In addition, petitioner gave bottles and sometimes cases of Balboa rum to licensees. He also gave bottles of rum to managers of state liquor stores to replace those bottles that were stolen after being displayed on the counter. The managers of the stores would have had to make replacements at their own expense if the petitioner had not done so. Approximately 25 to 30 stolen bottles were replaced by the petitioner in 1944. During the year 1944 petitioner spent $7,200 for the purchase of Balboa rum which he gave away free of charge to promote its sale. Petitioner was not reimbursed for those expenditures. The cost to petitioner of the Balboa rum given to licensees and to managers of state stores to replace stolen bottles totaled $3,500. The cost *99 to the petitioner of the Balboa rum given away to potential purchasers totaled $3,700 and constitutes an ordinary and necessary business exepnse. Regulation No. 37 of the Alabama Alcoholic Beverage Control Board provides as follows: "WHEREAS, the Distillers and Vintners listed with the Alabama Alcoholic Beverage Control Board desire, in furtherance of the declared purposes of the Representatives of the various Companies, to cooperate with the Board and the Administrator in promoting sound and ethical trade practices in the State, "BE IT RESOLVED, that for the more definite and specific guidance of Representatives of the Distillers and Vintners, no Agent, employee, or representative of any Distiller or Vintner shall directly or indirectly engage in any of the following transactions or actions: "1. Grant, allow, pay, or rebate, directly or indirectly any cash or merchandise to any Licensee, including (a) purchase of merchandise at retail for delivery to the Licensee; (b) grant or allow to pay anything of value to a Licensee for the privilege of advertising display; (c) grant, allow or pay tips to Licensees or their employees to induce the sale of merchandise; and (d) purchase *100 drinks "for the house" to induce the sale of merchandise. "2. Visit State stores or personally contact the Store employees for the purpose of promoting the sale of merchandise. "3. Solicit Store or Office personnel to promote the sale of particular brands otherwise than as authorized in regulations adopted by the Board. "4. Induce Licensee to acquire excessive amount of merchandise inventory. "5. Sell to Licensees on any terms other than cash. "6. Apply for information as to merchandise inventories, etc., only at the Central Office in such manner as shall be prescribed by the Board. "7. Entertain or offer gratuities to the Store or Office personnel, or otherwise contact such persons except in matters arising in the regular course of business." This regulation was promulgated on April 14, 1939, and remained in effect until February 19, 1947. In November, 1943, the Board placed its first order for the purchase of Alzola rum. At that time there was no Alzola representative in Alabama but shortly thereafter in 1943 the petitioner was appointed representative. Later it was discovered that the manufacturer of Alzola rum could only deliver a fraction of the number of cases *101 of Alzola which were ordered and petitioner thereupon began negotiations for appointment as representative of Balboa rum since it seemed that the manufacturer of Balboa rum was in a position to deliver substantial quantities. In the course of the negotiations, the petitioner was advised that the manufacturer of Balboa rum would not employ him as representative while he served as representative for Alzola rum. The petitioner thereupon relinquished his appointment as representative of Alzola rum and accepted an appointment as representative of Balboa rum in the early part of 1944. On petitioner's suggestion, his brother C. O. Newman was appointed representative of Alzola rum. The petitioner performed no services for the manufacturer of Alzola rum and did not advertise or promote Alzola rum at any time. Alzola rum went on sale for the first time in the state liquor stores of Alabama in the summer of 1944. During 1944, C. O. Newman served as representative for Alzola rum and advertised and promoted its sale. In August, 1944, the manufacturer of Alzola rum drew a check in the amount of $6,987, which was erroneously made payable to and delivered to the petitioner. That sum represented *102 commissions earned by C. O. Newman as representative of Alzola rum and should not have been made payable to the petitioner. Petitioner immediately transferred the sum to C. O. Newman. Opinion ARUNDELL, Judge: We have before us several issues arising from the petitioner's business activities as the Alabama representative for the manufacturer of Balboa rum. The first issue is whether the petitioner may deduct in 1944 the sum of $7,200 as advertising expense incurred in the promotion of Balboa rum. The evidence establishes and we have found that the petitioner spent $7,200 in 1944 for the purchase of Balboa rum which he distributed free in an effort to stimulate a demand for the product. The respondent contends that even if the sum of $7,200 was spent for rum given away for promotional purposes, the entire sum was not deductible because some of the gratuities were made in violation of the law of Alabama. The gratuties contested by the respondent were those to licensees and to managers of state liquor stores. We agree that those gratuities were made in violation of Regulation No. 37 of the Alabama Alcoholic Beverage Control Board, which was in effect during the period 1939 to 1947. *103 Regulation No. 37 provides, inter alia, that a representative such as the petitioner shall not - "1. Grant, allow pay, or rebate, directly or indirectly any cash or merchandise to any Licensee, including (a) purchase of merchandise at retail for delivery to a Licensee; (b) grant or allow to pay anything of value to a Licensee for the privilege of advertising display; (c) grant, allow or pay tips to Licensees or their employees to induce the sale of merchandise; and (d) purchase drinks "for the house" to induce the sale of merchandise. * * *
"7. Entertain or offer gratuities to the Store or Office personnel, or otherwise contact such persons except in matters arising in the regular course of business." In our judgment, the gratuities to licensees and to the managers of state liquor stores were clearly prohibited by the quoted provisions of the regulation. Inasmuch as the regulations of the Board have the force and effect of law ( Lovett v. State, 30 Ala. App. 334, 6 So. 2d 437; Cowan v. State, 32 Ala. App. 161, 22 So. 2d 917; see Alabama Code, 1940, Title 29, section 6), these gratuities were made in violation of the law of Alabama. By virtue of *104 their illegality, they are not deductible as ordinary and necessary business expenses. See Lilly v. Commissioner, 343 U.S. 90; G. A. Comeaux, 10 T.C. 201, affirmed, 176 Fed. (2d) 394; Kelley-Dempsey & Co., 31 B.T.A. 351. Since the record contains no evidence of the exact amount expended on the prohibited and permissible gratuities, an approximation is necessary. Cohan v. Commissioner, 39 Fed. (2d) 540. After considering such facts as the extent and nature of the petitioner's promotional activities, and the testimony of the managers of state liquor stores, our best judgment is that the petitioner expended $3,500 of the total $7,200 on the prohibited gratuities in 1944. This sum is not deductible as an ordinary and necessary business expense. See Lilly v. Commissioner supra; G. A. Comeaux, surra, and Kelley-Dempsey & Co., supra.The balance of $3,700 spent in 1944 on the permissible gratuities for the advertising and promotion of Balboa rum constitutes an ordinary and necessary business expense and is deductible. Section 23 (a) (1) (A) of the Code. The next question is how much of the total *105 rent and cost of redecoration paid by the petitioner in 1944 for an apartment which he used as a residence and business office may be deducted in that year as an ordinary and necessary business expense. The petitioner seeks to deduct $360 of the rent and $300 of the redecoration cost, and the respondent has allowed the sums of $110 and $58.33, respectively. After taking into consideration such factors as the size of the apartment, the number of residents, the office equipment in the apartment and the nature of the business conducted there, we are satisfied that it is fair and reasonable to allocate $220 of the total rent and $92 of the redecoration cost to the business use of the apartment. These sums are deductible as ordinary and necessary business expenses. Section 23 (a) (1) (A). The third question is the deductibility of the $2,400 sum claimed by the petitioner as salary paid to his wife in 1944 for secretarial services rendered in the apartment. The respondent has allowed $600 of this sum. Deductions claimed for intra-family transactions, especially alleged salary payments from husband to wife, must be closely examined to asertain that the sum claimed was in fact paid; *106 that it was paid for the alleged purpose and was what it purports to be; that it was paid for services actually rendered and also that the sum was not excessive. Section 23 (a) (1) (A); Weinstein v. Commissioner, 166 Fed. (2d) 81; see Evans Clark, 18 T.C. 780 (July 23, 1952); Estate of Carr V. Van Anda, 17 T.C. 1158, affirmed per curiam, 192 Fed. (2d) 391, and cases cited therein. After having made a careful study of the entire record with these considerations in mind, we find no reason to disturb the respondent's determination that a reasonable salary allowance for services rendered to the petitioner by his wife in 1944 was not in excess of $600. This sum is deductible as an ordinary and necessary business expense. Section 23 (a) (1) (A). The final question is whether a check in the amount of $6,987, payable to and received by the petitioner from the manufacturer of Alzola rum, represented commissions owing from that manufacturer to the petitioner or instead represented commissions due to the petitioner's brother, C. O. Newman. The petitioner was not the representative of Alzola rum at the time the Board purchased the Alzola *107 rum nor at the time it was received and sold in the state liquor stores. The petitioner had been appointed representative of Alzola rum after the purchase was made and he relinquished the appointment shortly thereafter at a time prior to the receipt of the rum. The petitioner relinquished the appointment to become eligible for appointment as representative of Balboa rum. His brother, C. O. Newman, was thereafter appointed representative of Alzola rum and served in that capacity. Upon delivery of Alzola rum to the state liquor stores, its sale was promoted by C. O. Newman, not the petitioner. The commissions due from manufacturers of Alzola rum were earned by C. O. Newman, not the petitioner, and although they were erroneously paid to the petitioner, they were immediately transferred to C. O. Newman. The respondent erred in including these commissions in the income of the petitioner. Decision will be entered under Rule 50.