77 So.2d 488

**C. F. COOLEY et al.**

v.

**STATE.**

8 Div. 702.

Supreme Court of Alabama.

Jan. 20, 1955.

Harold T. Pounders, Florence, for appellants.

Si. Garrett, Atty. Gen., Robt. P. Bradley, Asst. Atty. Gen., for appellee.

GOODWYN, Justice.

Bill in equity by the state, on relation of the solicitor of the eleventh judicial circuit and the solicitor of the Law & Equity Court of Lauderdale County, brought pursuant to the provisions of Code 1940, Tit. 29, § 141 et seq., to abate an alleged liquor nuisance. This appeal is by the respondents, C. F. and Mable Cooley, husband and wife, from the final decree making permanent the preliminary injunction and ordering a padlocking of the premises.

In the decree it is stated "that the respondents within six months prior to the commencement of this suit are guilty of maintaining an unlawful liquor nuisance, to-wit: an unlawful drinking place and one where intoxicants were kept for sale and sold to the general public who resorted to said premises for the purpose of illegally buying and drinking intoxicants, all at the residence known as 627 East College Street".

Passing over other questions presented, we are at the conclusion, after a careful consideration of the record, that the evidence is not sufficient to support the finding that respondents maintained on the premises a "liquor nuisance" Code 1940, Tit. 29, § 97 "within six months prior to the commencement of the suit" Code 1940, Tit. 29, § 145.

The evidence, taken orally before the court, was, in substance, as follows:

On December 19, 1952, the date the bill was filed, and for several years prior thereto, the respondents resided at 627 East College Street, Florence, Alabama. On March 28, 1950, Mable Cooley was arrested and subsequently convicted for violating the prohibition law. During an extended period of time prior to the filing of the bill, C. F. Cooley was arrested on several occasions in the City of Florence and charged with public drunkenness. There was testimony indicating that he drank about a pint of whiskey every day and was considered an alcoholic.

Law enforcement officers testified that on several occasions subsequent to Mable Cooley's arrest in 1950, and including the six months period just prior to the filing of this bill, the Cooley residence had been searched, with lawful authority, but that no unlawful beverages had been found. On one occasion, however, two glasses which smelled of whiskey were found in the kitchen. During this period various officers watched the Cooley residence and testified that they had observed persons driving up to the Cooley house both in cabs and in private automobiles, enter the house, and stay for various lengths of time. None of these persons was identified, nor were the reasons for their visits determined.

Introduced in evidence, over respondents' objection, was a portion of the testimony of Mable Cooley given by her as a witness during a murder trial which was had on November 17, 18 and 19, 1952. She was

asked on direct and cross-examination about her selling whiskey to the defendant Wright on December 19, 1951. She admitted that she did sell whiskey to Wright on that date, and on cross-examination, the following occurred:

"Q. You run a bootlegging house, do you? A. My husband works every day.

"Q. I say you are a bootlegger? A. Well, you can buy a drink there.

"Q. How long have you been bootlegging?

"Defendant Objects Because It Is Illegal, Irrelevant, and Immaterial, Objection Sustained.

"Q. How many people came to your house that day for drinks? A. I don't know.

"Q. Your best judgment? A. I don't know.

"Q. Fifty or seventy-five? A. I have never sold that much in a day.

"Q. What is the average sales per day?

"Defendant Objects Because It Is Illegal, Irrelevant, Incompetent and Prejudicial. Objection Sustained, You Said What Was The Average Sale Per Day—Ask About This Day.

"*     *     *     *     *     *

"Q. Are you still in that business?

"Defendant Objects Because It Is Illegal, Irrelevant, and Immaterial. Objection Sustained."

On December 16, 1952, a warrant was obtained and the Cooley premises were searched by law enforcement officers. Upon entering the house, officers observed Mable Cooley breaking a pint bottle of bonded whiskey in the sink and discovered ten pints of bonded whiskey in the attic. She was arrested at that time and later convicted for violating the prohibition law. We judicially know that Lauderdale County is a "dry county".

The state produced no other evidence from which a determination could be made, or an inference could be raised, that the Cooleys were, at the time of filing the bill, or at any time within six months prior thereto, maintaining a liquor nuisance as charged in the bill of complaint.

Mable Cooley, the only witness on behalf of appellants, admitted in open court that on December 19, 1951, and for some time prior thereto, she had kept and sold prohibited liquors at her residence. She denied keeping any for sale, or selling any, subsequent to that date. She explained her testimony in the murder trial, above referred to, and said that her statement, "Well, you can buy a drink there", was not a statement of fact existing on the date the testimony was given, but had reference to the incident about which she was called to testify, that is, the date in 1951 when she sold whiskey to Wright. Assuming, without deciding, that her testimony in the murder trial was properly admitted in evidence, we do not view such testimony, either considered alone or in connection with the other evidence, as sufficient to show that appellants were maintaining a "liquor nuisance" as charged in the bill. We are persuaded that her explanation of such testimony was reasonable, supported as it is by the trial court's exclusion of evidence relating to her dealings in liquor other than on December 19, 1951. She also testified that since December, 1951, whiskey had been kept in the house for the consumption of C. F. Cooley and to be used while entertaining friends on various occasions. With regard to the liquor found in the house just prior to the filing of the instant bill, she stated that she had purchased twelve pints of whiskey at the state liquor store in Sheffield the day before the raid. According to her testimony the purchase was made to provide C. F. Cooley with enough liquor to last through the Christmas and New Year holiday season. She stated that he drank one pint, she broke one, and the other ten pints were confiscated by the officers.

In support of the decree, the state, in its brief, apparently relies upon the showing that unlawful liquor was found on the premises a few days prior to the filing of the bill and the testimony that officers "had

observed the house in question on numerous occasions and had seen taxis and other cars bring and take away people who entered and left the house."

Under § 155, Tit. 29, Code 1940, the mere possession of prohibited liquors or beverages in a building used exclusively for a dwelling is not prima facie evidence that they are kept for sale. Cowan v. State, 32 Ala.App. 161, 162, 22 So.2d 917; Strickland v. State, 20 Ala.App. 600, 104 So. 351. And it has been held that "bare possession does not in and of itself amount to a nuisance as defined by section 4619 [Code 1923] [§ 97, Tit. 29, Code 1940]." Harvell v. State, 235 Ala. 329, 330, 179 So. 233. Our view is that the evidence here, showing only a bare possession of whiskey coupled with the fact that unidentified people employing various means of transportation had occasion to visit appellants' house frequently, is not sufficient to warrant an inference that appellants' house was "an unlawful drinking place and one where intoxicants were kept for sale and sold to the general public who resorted to said premises for the purpose of illegally buying and drinking intoxicants." Nor do we think that § 97, Tit. 29, Code 1940, supra, defining those things declared to be liquor nuisances subject to abatement, contemplates the inclusion of social drinking within the confines of one's own home as such a "liquor nuisance", in the absence of evidence showing, or from which there can be a reasonable inference, that the persons who resort there do so for the main purpose of drinking unlawful liquors or beverages. We find no such evidence in this case. See Lambert v. State, 248 Ala. 487, 488, 28 So.2d 412.

We do not think the evidence sufficiently shows that a liquor nuisance, subject to abatement and padlocking, existed in this case. Accordingly, a decree will be here rendered denying relief and dismissing the cause.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.