JOHN SATTELMAIER AND DONNA K. SATTELMAIER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sattelmaier v. Commissioner
Docket No. 16097-88
United States Tax Court
T.C. Memo 1991-597; 1991 Tax Ct. Memo LEXIS 647; 62 T.C.M. (CCH) 1364; T.C.M. (RIA) 91597; December 2, 1991, Filed *647 Decision will be entered under Rule 155. Harry L. Cohn, for the petitioners. Scott Anderson, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS FACT AND OPINION Respondent determined the following deficiencies and additions to tax for petitioners:  Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 33,205
$ 1,660
*
--  1982
34,462
1,723
*
$ 8,616
1983
16,847
842
*
4,212
1984
11,737
587
*
2,934
Respondent determined that petitioners received but did not report income from Magna Print Company, Inc. (Magna Print), in the form of Magna Print checks to petitioner, cash, and third parties for petitioners' benefit, and that petitioners were not entitled to certain itemized deductions reported on their income tax returns for 1981 through 1984. After concessions, the issues for decision are: (1) Whether respondent's determination of petitioners' income and deductions should be sustained. We hold that it *648 should. (2) Whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) and for substantial understatement of income tax under section 6661(a). We hold that they are. References to petitioner in the singular are to John K. Sattelmaier. Section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners John Sattelmaier and Donna K. (Lynn) Sattelmaier are husband and wife who lived in Richmond, Virginia, when the petition was filed. During the years in issue, they owned their home and were responsible for its mortgage payments. Petitioners used personal credit cards. Petitioners did not have a reliable system for keeping personal records. Petitioner is a high school graduate. He has taken some college business courses. He had been a salesman for a steel company for 12 years. During the years in issue, petitioner worked for Magna Print. During those years petitioners owned one automobile. Petitioner drove a company *649 car. 2. Magna Print
Magna Print was incorporated around 1980. As discussed below, Magna Print was previously found to engage in fraudulent activities, including the fabrication of records in connection with selling a tax shelter program to investors. Chellappan v. Commissioner, T.C. Memo 1988-208. Magna Print adapted a photocopier to transfer a design from paper to cloth, brass, or other metals using heat. These machines, called the Magna Print 2000, were marketed to third parties as tax shelter investments. The principals of Magna Print were petitioner, Michael Sattelmaier (petitioner's brother), John Norris, and two of Michael Sattelmaier's friends. Petitioner was president of Magna Print during the years in issue. John Norris was vice president of Magna Print through 1982. Larry Randall was at one time an officer of Magna Print. Some of these individuals invested money in Magna Print. Petitioner mortgaged his house for $ 75,000 and invested the proceeds in Magna Print. There is no documentary evidence in the record that this transaction was a loan. Magna Print did not have a reliable record keeping system. Some of the Magna Print records *650 were removed to the Bahamas by Larry Pender, a representative of CCI Leasing, Inc., a Magna Print creditor. Magna Print employees attended trade shows during the years in issue to market the Magna Print 2000. The shows were held in New York, Los Angeles, Las Vegas, Atlanta, Kansas City, Dallas, and other cities, and were from 1 to 3 days long. Petitioner attended some of these shows. At the shows, petitioner spoke to potential customers and demonstrated the equipment. Magna Print had a policy of reimbursing employees for expenses they incurred to attend trade shows and for other Magna Print expenses in one of two ways. They were either to be given cash advances which were to be substantiated later with receipts, or they were to pay for the expenses themselves and be reimbursed later. Magna Print's record keeping system in this regard was not reliable. There are no records indicating that Magna Print's practice was consistent with its policy. Magna Print had an office in Alexandria, Virginia, and a warehouse in Richmond, Virginia (the Main Street office). Petitioner drove to the Alexandria office often. Magna Print purchased company vehicles through Ford Motor Credit Corporation, *651 including a small cargo van and several Ford Escorts. From 1981 to 1984, checks were written on Magna Print's bank accounts payable to petitioner, cash, and financial institutions. The parties have stipulated to the tax treatment of many of the checks. Petitioner wrote Magna Print checks payable to himself totaling $ 2,777.78 in 1981, $ 20,527 in 1982, $ 21,495 in 1983, and $ 16,950 in 1984. Some of these amounts were reported on petitioners' income tax returns. Petitioner wrote and either he or his wife signed checks payable to cash totaling $ 7,769.68 in 1981 and $ 6,375 in 1982. Most of the checks did not have memos. For example, in 1981 only two checks, both dated September 8, 1981, had memos. One check for $ 56.17 said "reimbursement." The other check for $ 89.86 said "trip to Washington." In 1982, 1983, and 1984, check amounts and corresponding memos included: $ 750 "Postage Stamps and N.Y."; $ 600 "Utah"; $ 178 "Washington"; and $ 85 "Norfolk." Two checks had a "cash box" memo. Other checks had memos such as "weight suit," "Christmas Party," "Building Permit," "BMW Transmission Repair," "medical," and "Conhan." Other memos referred to stamps, gas, phone, and lunches. *652 Some checks state "loan." Most of checks that petitioners claim to be for expenses were written to round amounts to the nearest $ 50 or $ 100. In 1981, petitioner received bimonthly Magna Print checks for $ 620 payable to cash or to petitioner. In March 1982, petitioner's draw changed to $ 1,820 each month and later $ 1,830. The regular draws ended in July 1983. They were replaced by draws in changing amounts. Petitioner wrote and signed checks on Magna Print's bank accounts payable to banks and financial institutions totaling $ 11,210.92 in 1981, $ 42,187.51 [1] in 1982, $ 21,305.06 in 1983, and $ 16,372.45 in 1984. These checks were to pay for items such as first and second home mortgages and personal credit cards. Some of these checks were written to Ford Motor Credit Corporation. Magna Print checks were also used to pay the mortgage for petitioner's father's home in 1982 and 1983. 3. Petitioners' Tax Returns
Petitioners timely filed *653 joint Federal income tax returns for 1981, 1982, 1983, and 1984 and claimed Schedule A itemized deductions for each year including medical and dental insurance, real estate and personal property taxes, interest to financial institutions for loans and credit cards, cash contributions, union and professional dues, tax preparation, telephone expenses, and a safe deposit box. Of the Magna Print checks remaining in dispute, respondent determined amounts to be unreported income because they were written to petitioner, to cash, or to third parties for petitioners' benefit. Respondent disallowed the itemized deductions remaining in dispute because they were paid by Magna Print or were unsubstantiated. OPINION We must decide whether the checks which remain in dispute were unreported income or proper deductions for petitioners. We must also decide whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) and for substantial understatement of income tax under section 6661(a). 1. Overview
Petitioners' evidence in this case was primarily petitioner's testimony as he attempted to cover each disputed check. His testimony was vague and without *654 much detail. He admitted that he did not know why he wrote some of the checks. John Norris also testified for petitioners. However, his testimony was also very general and not very helpful to their case. No other witnesses were called to testify. Corroboration for the testimony was minimal. Petitioners argue that John Norris was an unbiased witness with no interest in the outcome of the case who corroborated petitioner's testimony. We disagree. Magna Print business records were seized by a creditor in the Bahamas. However, this provides little excuse for petitioners' failure to carry their burden of proof. Petitioners did not claim that their personal records were unavailable for any reason. Although petitioner testified that Magna Print had files, we were not persuaded that Magna Print had a credible record keeping system. John Norris testified that Magna Print employees were required to account for expenses for which they were reimbursed; however, no expense records were introduced at trial. We note that a prior case focused on Magna Print during 1979 through 1985. Chellappan v. Commissioner, T.C. Memo 1988-208. In that case, petitioner John Sattelmaier, *655 John Norris, and others were also found to be the principals in Magna Print. We concluded that Magna Print records were fabricated as a part of sham and fraudulent transactions perpetrated by Magna Print and its employees on taxpayers while attempting to sell Magna Print investments as tax shelters. We further found that John Norris participated in the record fabrication. We have been provided no reason to now conclude that Magna Print records are reliable in this case. In the case before us petitioner testified that Magna Print had no documentation for alleged loans between him and Magna Print. One of those loans is alleged to be for $ 75,000. Petitioner also testified that Magna Print often dealt in cash. Petitioners also rely on memos on checks as corroboration. However, even this was inconsistent. For example, most of the checks did not have memos. Of those that did, many simply stated "loan." However, we do not believe these checks relate to loans between petitioner and Magna Print. Thus, we do not view the check memos to be very persuasive corroboration. 2. Unreported Income
Respondent determined that certain Magna Print checks made payable to petitioner, to *656 cash, and to certain third parties were unreported income to petitioners. Petitioners concede that petitioner withdrew Magna Print funds for living expenses and that those amounts are taxable income to them. They also concede unreported income for mortgage payments made by Magna Print directly to banks. On brief, petitioners concede unreported income of $ 14,283.98 for 1981, $ 15,973.30 for 1982, $ 25,230.94 for 1983, and $ 23,100.04 for 1984. Petitioners assert four theories to counter respondent's determination that certain amounts received by petitioners or paid on behalf of petitioners were unreported income. Petitioners contend that these amounts were: (1) Repayments of a loan from petitioner to Magna Print; (2) reimbursements by Magna Print to petitioner for Magna Print business expenses which he personally paid; (3) Magna Print business expenses paid to third parties; or (4) loans from Magna Print to him. Petitioners' proof consisted primarily of petitioner's testimony and memos on some of the checks. Respondent contends that petitioners have failed to carry their burden of proof with respect to the unreported income determination. We agree. Section 61 provides that *657 gross income includes "all income from whatever source derived." The Supreme Court has held that whenever a taxpayer acquires wealth and has such control over the property "that, as a practical matter, he derives readily realizable economic value from it," the taxpayer is regarded generally as having received income and is liable for tax on the income. James v. United States, 366 U.S. 213, 219, 6 L. Ed. 2d 246, 81 S. Ct. 1052 (1961) (citing) Rutkin v. United States, 343 U.S. 130, 137, 96 L. Ed. 833, 72 S. Ct. 571 (1952); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431, 99 L. Ed. 483, 75 S. Ct. 473 (1955). Gross income includes compensation for services, in whatever form received, Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 720, 73 L. Ed. 918, 49 S. Ct. 499 (1929). Respondent's determination is presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Petitioners must overcome the presumption as to each item of unreported income in respondent's deficiency determination. Foster v. Commissioner, 391 F.2d 727, 735 (4th Cir. 1968), affg. in part, revg. in part on other grounds T.C. Memo 1965-246. *658 a. Loan Repayment Theory
Petitioner contends that some amounts that he received from Magna Print were repayment of a loan, and, therefore, he did not report it as income. To prevail, petitioner must prove a bona fide indebtedness. The Court of Appeals for the Fourth Circuit, to which this case is appealable, has held that the classification of advances as debt or equity is a question of fact. Piedmont Minerals Co. v. United States, 429 F.2d 560, 563 (4th Cir. 1970). We consider the following factors: (1) Whether a note or other evidence of indebtedness exists, Piedmont Minerals Co. v. United States, supra at 563; Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953); (2) whether there is any written loan agreement, Piedmont Minerals Co. v. United States, supra; Road Materials, Inc. v. Commissioner, 407 F.2d 1121 (4th Cir. 1969), affg. T.C. Memo 1967-187; (3) whether there is a fixed schedule for repayment, Clark v. Commissioner, supra; (4) whether any security or collateral is requested, *659 Piedmont Minerals Co. v. United States, supra; Zimmerman v. United States, 318 F.2d 611, 613 (9th Cir. 1963); (5) whether interest is charged, Piedmont Minerals Co. v. United States, supra; Clark v. Commissioner, supra; (6) whether a demand for repayment has been made, Montgomery v. United States, 87 Ct. Cl. 218, 23 F. Supp. 130 (1938); (7) whether the parties' records, if any, reflect the transaction as a loan, Road Materials, Inc. v. Commissioner, supra at 1124; (8) whether any repayments have been made, Piedmont Minerals Co. v. United States, supra; Estate of Ames v. Commissioner, a Memorandum Opinion of this Court dated February 7, 1946; and (9) whether the borrower was solvent at the time of the loan, Jewell Ridge Coal Corp. v. Commissioner, 318 F.2d 695 (4th Cir. 1963), affg. T.C. Memo 1962-194. See also Hunt v. Commissioner, T.C. Memo 1989-335; Goldstein v. Commissioner, T.C. Memo 1980-273. Petitioner testified that he mortgaged *660 his home for $ 75,000 and lent the mortgage proceeds to Magna Print. However, he did not provide information about the terms of his loan to Magna Print or about a repayment schedule. He did not offer into evidence a note or other documentation showing that an indebtedness existed. He did not show that a fixed schedule existed for repayment of a loan. Petitioner testified that he did not have a capital or loan account with Magna Print. He conceded that there was no system to account for money he withdrew from Magna Print. Petitioner did not show that security or collateral was requested for the loan, or that a written loan agreement existed between him and Magna Print. He, likewise, did not show whether he charged interest to Magna Print on the loan or whether he made a demand for repayment of the loan. Some check memos include the description "loan." However, we are not persuaded that these checks related to any loans between Magna Print and petitioner. We are not convinced that any of the factors are in petitioners' favor. Consequently, we hold that none of the payments to or on behalf of petitioner were repayment of a loan. b. Reimbursements to Petitioner of Magna *661 Print Business Expenses
Petitioners argue that some amounts paid to petitioner were reimbursement for expenses that he paid on behalf of Magna Print, and, thus, they were not income. Respondent contends that even if some portion of the proceeds were received by petitioner as reimbursement of Magna Print expenses, those receipts are gross income. Respondent acknowledges that petitioner may be entitled to a deduction under section 162 for ordinary and necessary expenses to the extent that petitioner proves he incurred the expenses in carrying on Magna Print business. i. Trade Show Expenses
Trade show expenses represent the largest category of expenses under petitioners' expense reimbursement theory. We recognize that petitioner attended trade shows, and that there were costs associated with them. However, petitioner has not convinced us that any of the checks in dispute were reimbursements for trade show expenses. Only some checks contain handwritten memos indicating the purpose of the check. For example, of the checks written to petitioner or to cash in 1981, only two checks -- both dated September 8, 1981, and in the total amount of $ 146.03 -- contain such memos. *662 The notations are "reimbursement" on a check for $ 56.17, and "trip to Washington" on a $ 89.86 check. The record contains no details as to the nature of the expenses or how they were paid. With regard to the first check, petitioner testified, "It was a reimbursement of some kind. I can't recall what it was for." Petitioner testified that the second check was an expense check. Petitioner did not provide convincing records to support his conclusion. Accordingly, we are not persuaded that he expended $ 146.03 in 1981 while carrying on Magna Print business. Likewise, in 1982, 1983, and 1984, petitioner asserts trade show or travel expense reimbursement for checks with memos as follows: $ 750 "Postage Stamps and N.Y."; $ 600 "Utah"; $ 178 "Washington"; and $ 85 "Norfolk." Petitioner did not explain the round amounts of the purported reimbursements. He was unable to provide any details as to how he paid for these items, and why he had no records of his payments. Accordingly, we hold that these amounts are income to petitioner and not reimbursement of trade show or travel expenses other than otherwise conceded by respondent. ii. Miscellaneous Magna Print Expenses
Respondent *663 determined that eight checks with a memo of "Expenses" were income to petitioner. Petitioners provided no evidence as the particular expense petitioner claims to have paid for Magna Print. Petitioner could not recall the purpose of some of these checks and characterized the others simply as payment of expenses. Accordingly, we hold that they are income to petitioner. Similarly, six checks in the record contain memos referring to expenses for "Main Street." Petitioner testified that these checks were for expenses incurred renovating Magna Print's Virginia office. Some expenses were to pay for meals of friends who helped renovate the office without pay. Two checks had a "cash box" memo. Petitioner testified that one of them related to renovation of Magna Print's Richmond office. Petitioner does not recall cashing the other. One check had a "weight suit" memo. Petitioners argue that this was for expenses relating to a prototype weight suit developed by Magna Print. One check had a "Christmas Party" memo. Petitioner testified only that this was for the office Christmas party. One check had a "Building Permit" memo. Petitioner testified that this check related to renovation *664 of Magna Print's Richmond office. The memo on another check said "BMW Transmission Repair." Petitioner testified that this was reimbursement to him for the repair of a BMW automobile used by an Econo Copy employee. Accordingly, assuming that petitioner paid for the repair, the expense was that of Econo Copy and not of Magna Print. The memo on another check said "stamps, gas, lunches." Petitioner testified that these were office expenses for which he was reimbursed. Four other checks had a "gas reimbursement" memo. One check for $ 350 had a "Conhan" memo. Petitioner testified that this was expense reimbursement for trips to Washington, D.C. However, he provided no details about the trip, the expenses, or how they were paid. One check for $ 350 had a "medical" memo. Petitioner testified that this was for "miscellaneous expenses." One check had a "phone bill reimbursement" memo. Petitioner testified that this was reimbursement for company business calls which he made from his home. He did not provide copies of his personal phone bills, to corroborate this statement. Petitioner failed to provide sufficient details for any of these miscellaneous expenses. Aside from the cryptic *665 memos on the checks, petitioner did not provide any corroboration that the expenses were Magna Print business expenses or that he paid them with his personal funds. Accordingly, we hold that these amounts are income to petitioner and not reimbursement of expenses other than otherwise conceded by respondent. c. Magna Print Expenses Paid to Third Parties
Respondent determined that several Magna Print checks payable to third parties were income to petitioners. i. Magna Print Payment of Petitioners' Personal Expenses
Respondent determined that certain checks written on Magna Print accounts to various third parties, such as banks and institutions providing credit, were income to petitioners. Personal expenses of an employee paid by an employer constitute taxable income to the employee. Cirelli v. Commissioner, 82 T.C. 335, 351 (1984); Drew v. Commissioner, T.C. Memo 1972-40. Petitioners argue that these checks are for Magna Print business expenses. For example, one group of checks was written to Ford Motor Credit Corp. Petitioner testified that none of the vehicles which Magna Print purchased through Ford Motor Credit was titled *666 in his name. Petitioner also testified that Magna Print had a small cargo van and several Ford Escorts financed through Ford Motor Credit Corporation. He also did not show that his personal vehicle was not financed through Ford Motor Credit. Petitioners have failed to persuade us that they paid the Magna Print expenses upon which the reimbursement theory is based. Moreover, petitioners have not convinced us that any amounts expended were ordinary and necessary business expenses of Magna Print. Accordingly, we hold that these amounts are income to petitioner and not reimbursements to petitioner for Magna Print expenses. ii. Petitioner's Father's Mortgage Payments
Petitioner wrote Magna Print checks to pay the loan on his father's home in 1982 and 1983. Petitioner testified that he and his brother obtained the mortgage in 1978. Petitioner failed to show that the loan on petitioner's father's home is a business expense of Magna Print. Moreover, it appears that petitioner and his brother were personally liable for the loan. Accordingly, we hold that amounts paid by Magna Print on this loan were income to petitioners. iii. Petitioner's Credit Card Accounts
Petitioner *667 wrote Magna Print checks to pay his personal credit card accounts. He testified that the payments were for business expenses charged on his credit card, but provided no details to support this theory. He acknowledged that his wife used the same credit cards, but testified that petitioners used their personal funds to pay those amounts. He provided no evidence to corroborate his testimony in this regard. The record contains a few copies of credit card statements which indicate the finance charges billed on these accounts for particular years in issue. However, even to the extent that these few statements list purchases, there is no evidence to show that the purchases were made on Magna Print's behalf. Petitioners have failed to persuade us that respondent's determination that Magna Print checks paid to third parties were for petitioners' personal benefit. Thus, the checks are income to petitioners. Accordingly, we hold that Magna Print checks made payable to third parties are income to petitioners. d. Magna Print Loans to Petitioner
Respondent determined that six $ 1,000 checks with a "loan" memo on each of them were income to petitioner. Petitioner did not recall much *668 about these checks. He was not certain whether they should have been designated as his salary. Again, there are no records of any loans by Magna Print to petitioner. Petitioner testified that he did not have a loan account with Magna Print. Moreover, petitioner testified that he had no intention of repaying any money to Magna Print. We believe that petitioner merely withdrew Magna Print funds and wrote "loan" as a memo on some of the checks. Consequently, we hold that these checks were income to petitioners. As to any other claimed loan to petitioner by Magna Print, the record does not support a finding that such loans existed. e. Checks Payable to Petitioner Without Memos
A large number of checks written to petitioner did not contain memos. We are not convinced by petitioner's claims about loan repayment and expense reimbursements. Petitioner advances no other theory to counter respondent's determination that the Magna Print checks payable to petitioner without memos are income to petitioner. Consequently, we hold that they are income to him. f. Checks Payable to Cash Without Memos
As with the checks written to petitioner, respondent determined that the Magna *669 Print checks made payable to cash that did not contain memos and that were negotiated by petitioners were income to them. Respondent also determined that certain checks written to cash with no endorsement were income to petitioners. Petitioner argues that these checks were either loan repayments or Magna Print expense reimbursement. We have rejected both theories. Therefore, we hold that Magna Print checks made payable to cash without memos and negotiated by petitioner are income to him. 3. Itemized Deductions
Petitioners claimed Schedule A itemized deductions for each of the years in issue. Respondent disallowed some of these deductions. Many of them were disallowed because Magna Print, rather than petitioners, paid the expenses. Others were disallowed because of a lack of substantiation. As with their other theories, we conclude that petitioners failed to carry their burden of proof. Petitioners have failed to persuade us that they are entitled to any of the deductions in excess of those allowed by respondent. 4. Additions to Tax for Negligence
Respondent determined that petitioners are liable for additions to tax for negligence under section 6653(a)(1) and *670 (2) for each of the years before us. Petitioners bear the burden of proving that the understatements of tax were not due to negligence. Warrensburg Board & Paper Corp. v. Commissioner, 77 T.C. 1107, 1112 (1981); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners assert that they are not subject to the negligence addition to tax because petitioner in good faith believed that the money he received from Magna Print was in part a repayment of the $ 75,000 loan he made to the company. Section 6653(a)(1) imposes an addition to tax equal to five percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an additional liability of 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules or regulations. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), *671 affg. 79 T.C. 714 (1982); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part on other grounds 43 T.C. 168 (1964) and T.C. Memo 1964-299; Neely v. Commissioner, 85 T.C. 934, 947 (1985). The addition to tax for negligence will not be imposed where the failure to report income (or the deficiency) was due to a mistaken interpretation (honest misconceptions) of the law on which there can be an honest (understandable) difference of opinion. Wiggins v. Commissioner, 92 T.C. 869, 873 (1989), affd. 904 F.2d 311 (5th Cir. 1990); Dillin v. Commissioner, 56 T.C. 228, 248 (1971); Lemery v. Commissioner, 54 T.C. 480, 490 (1970). We do not find such an honest misconception of law here. Petitioners have failed to carry their burden of proving respondent's determination as to negligence to be in error. We find a consistent and extensive pattern of unreported income. A similar pattern involves petitioner's use of corporate funds to pay personal expenses. Petitioners failed to maintain *672 adequate records. There is no evidence that a reliable system for Magna Print record keeping existed. We hold that petitioners are liable for negligence for the full amount of the underpayment of income tax. 5. Addition to Tax for Substantial Understatement of Income Tax
Respondent determined that petitioners are liable for the addition to tax for substantial understatement of income tax under section 6661 for 1982, 1983, and 1984. Petitioners contend that they are not subject to this addition to tax because there is substantial authority that repayment of a loan is not income. Section 6661(a) imposes an addition to tax when there is a substantial understatement of income tax in any given taxable year. An addition to tax is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Sec. 6661(a). A substantial understatement exists if in any year the amount of the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the *673 amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). In this case, petitioners have conceded that petitioner received unreported income of $ 67,698.41 from Magna Print, not including the amounts of unreported income and disallowed deductions redetermined here. Therefore, petitioners clearly exceed the amount of the understatement for the addition to tax under section 6661 to apply. Petitioners rely on the substantial authority exception to section 6661. Under this exception, the amount of the understatement is reduced if there is substantial authority for the tax treatment of the item. Sec. 6661(b)(2)(B)(i); sec. 1.6661-3, Income Tax Regs. Although there is substantial authority that repayment of a loan is not income, we have found that no such loan exists in this case. Therefore, petitioners' claim of substantial authority fails. Accordingly, we hold that petitioners are liable for the addition to tax under section 6661. To reflect concessions, Decision will be entered under Rule 155. Footnotes
*. To be determined.↩
1. The stipulation incorrectly stated this amount as $ 41,122.61.↩