## MONTGOMERY v. UNITED STATES.
### No. 43136.

Court of Claims.
May 2, 1938.

Louis B. Montfort, of Washington, D. C., for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

Thomas G. Haight, of Jersey City, N. J. (J. Marvin Haynes, of Washington, D. C., and James O. Wynn, Thomas Tarleau, and George G. Blattmachr, of New York City, on the briefs), for plaintiff.

G. W. Billings, of Washington, D. C., and James W. Morris, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The plaintiff is suing for the allowance of certain deductions in his gross income

for the calendar year 1932. Eight errors are assigned in the original petition but three (items (a), (g), and (h), finding 5) have been abandoned prior to the submission of the case.

■ The plaintiff paid an additional income tax to the state of New York in the sum of $411.34, for which a timely claim for refund was filed and an amendment made to the original petition claiming the deduction of this amount. There is no question that this deduction is clearly allowable.

The five remaining items will be considered separately.

### (1) The McDowell Club Bonds.

■■ In 1926 and 1927 the plaintiff purchased three bonds of the McDowell Club, aggregating $4,000. The club was organized and conducted by musicians, poets, and other types of professional people. The club defaulted in the payment of interest on these bonds in 1931 and conditions caused by the general depression of business destroyed the income-producing activities of the club to such an extent that serious financial embrassment was facing the club in meeting its expenses. Some of the members donated their bonds. There was a first mortgage ahead of the bonds which, by reason of the failure to pay the real property taxes, was in default in December 1932. Knowing the financial condition of the club, plaintiff decided the bonds were worthless and charged them off as a total loss in 1932. Section 23(j) of the Revenue Act of 1932, 47 Stat. 179, 26 U.S.C.A. § 23 and note, provides for a deduction for "Debts ascertained to be worthless and charged off within the taxable year." We are of the opinion that a reasonable ascertainment of worthlessness was made and we have so found as an ultimate fact.

The defendant contends that a reasonable ascertainment of worthlessness was not had because the plaintiff did not dispose of the bonds and the club remained in existence after the year in which the deduction was taken. We are not considering a total loss but a reasonable ascertainment of worthlessness. The actual situation which existed at the time the plaintiff passed on their value together with the surrounding circumstances justified the conclusion that nothing would ever be received in the future. The remote possibility of some nominal recovery in future years does not preclude the deduction claimed. The debtor does not have to liquidate before the taxpayer can claim worthlessness. A disposal or attempt at sale is not a necessary step before taking the deduction. Selden v. Heiner, D.C., 12 F.2d 474; Peyton Du-Pont Securities Co. v. Commissioner, 2 Cir., 66 F.2d 718; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120.

The taxpayer still retains the bonds but the evidence fails to disclose any value attached to them in future years. The ascertainment of worthlessness was justifiable.

### (2) Stock of Eitingon-Schild Corporation.

■ Plaintiff held stock in this corporation and claims a deduction for a loss sustained by reason of the decline in value of the stock. Section 23(e) of the Revenue Act of 1932, 47 Stat. 179, 26 U.S.C.A. § 23 and note, allows a deduction for losses sustained during the taxable year. The plaintiff did not sell the stock until 1934, when he received a small amount of the purchase price. It is true at the time the deduction was taken the corporation had suffered heavy financial losses and subsequently was reorganized. But the plaintiff retained his stock and received new stock in the reorganization set-up. We are not dealing with a decline in value or partial worthlessness of the stock. The statute does not permit a partial loss. Actual worthlessness is the test. All reasonable possibility of realization of something on the stock must be destroyed before the deduction is allowable. Olds & Whipple v. Commissioner, 2 Cir., 75 F.2d 272. The mere opinion of the taxpayer of worthlessness without some circumstantial facts to fortify or justify such a conclusion cannot be accepted. In this particular case, as a matter of fact, the stock was not worthless and the opinion of the taxpayer was based solely on hearsay evidence. The stock at that time was still quoted and was listed at a real market value. The plaintiff ignored the quoted market value in arriving at his conclusion of worthlessness. The plaintiff purchased the stock a few months before claiming the deduction, and when the purchase was made knew the company was operating at a loss and the stock had declined greatly in value. We can find no justification for the allowance of this deduction.

### (3) Alleged Loan to Son.

█ The facts in this instance are so convincing that the plaintiff made a gift to his son and not a loan that we feel it hardly necessary to discuss it in detail. The son of the plaintiff had specialized in mineralogy at college and decided to go to work in the 3—R mine. He expressed a desire to his father to own some stock in this mining corporation. Over two years before this deduction for a loss was claimed, the plaintiff gave to his son $1,700 with which to purchase the stock. The stock was purchased in the son's name and retained by him always. The mine was a total failure and the stock became worthless shortly before the end of the year 1932. We must look at the substance and not at the form in which this is treated by the plaintiff. Not an element of a loan is to be found but, on the contrary, all the elements of a gift, pure and simple. The money was given to the son to purchase the stock and the stock was issued in his name and retained by him, no evidence of the loan being given to the father. Even the books of the plaintiff fail to disclose any evidence of a loan. The amount was entered "As for account of the 3-R Mine." These words, given their ordinary meaning, fail to carry any declaration of an intended loan to the son. Their vagueness carries the conviction that a gift was intended by the father to assist the son in following his chosen profession. The Commissioner was not in error in disallowing the deduction on this item.

### (4) Loan to McBride.

█ The plaintiff in 1930 loaned to his close personal friend, McBride, $19,200 for the purpose of redeeming from his brokers certain securities which had been pledged to secure loans. These stocks had been purchased on margin and the brokers were demanding additional cash. The picture of this transaction we have set out in detail in the findings at the request of plaintiff. When the loan was made, the plaintiff knew of the declining market condition and, after retaining these stocks as collateral for over two years, a sale was made for $9,113 less than the amount of the loan. The plaintiff claims this amount as a deduction in his 1932 income tax returns, as a debt ascertained to be worthless and charged off during the year. The closer we view the entire transaction, the more convinced we are that the Commissioner was correct in not allowing the deduction. The plaintiff and McBride had been personal friends for a third of a century and the plaintiff was well aware that the business conducted by McBride had not been prospering for several years but was just struggling along and not making money. Knowing the condition of the stock market and the poor condition of McBride's business, nevertheless plaintiff made the loan to his friend. The plaintiff is a prudent business man and it seems unbelievable that, with these facts and circumstances before him, he would have made the loan without some strong personal influence. The record does not disclose that McBride has ceased to be in the publishing business. He was a very large holder of stock in two corporations and both were in business in 1932. The plaintiff made no effort to collect the deficiency. The mere statement that it would have been futile does not carry conviction when it is shown that McBride is still in business. The plaintiff sold the securities held as collateral to a nursery corporation in which he was a large stockholder. The evidence is not sufficient to overcome the finding of the Commissioner that there was not a reasonable ascertainment of worthlessness.

### (5) Mountain Lake Property

█ The plaintiff claims a deduction from gross income for 1932 on account of depreciation, repairs, and other expenses in connection with a house and lot at the exclusive Mountain Lake Club, near Lake Wales, Fla. The property had been acquired by gift from his wife and had been occupied by them as a winter residence. The plaintiff tried to rent or sell it but it remained vacant until 1935, when a sale was consummated. The identical issue on account of the same property was before the Board of Tax Appeals for 1933 and was decided adversely to the plaintiff. We are in accord with the conclusions therein reached. See Robert H. Montgomery and Lois C. Montgomery v. Commissioner, 37 B.T.A. 232, decision promulgated February 1, 1938.

Judgment in favor of the plaintiff will be suspended pending the submission of computations by the parties in accordance with this decision. It is so ordered.