E. J. ELLISBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10060. Promulgated September 26, 1947.

---

*Norman Block, Esq.*, for the petitioner.
*George J. LeBlanc, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The respondent disallowed the deduction of the bad debt involved here from petitioner's 1941 gross income with the expla-

nation attached to the notice of deficiency that the payments made by petitioner on his note in that year "do not represent allowable deductions from your income for the year 1941."

The position of the respondent rests on the fact that the debt of the son to petitioner arising by reason of any payment by petitioner pursuant to his obligation as endorser became worthless prior to 1941. Indeed, all the evidence does establish the fact that it was worthless in 1939, and there is no serious contention on petitioner's part that it was not. However, this fact is not, in itself, fatal to petitioner's case. Petitioner was called upon as endorser of his son's notes to make an involuntary payment on account of his endorsement. He made this payment by executing his own note, which the payee of his son's notes took as payment of the latter notes. Thereupon his son was obligated to him in the sum of petitioner's own note. See *Stanley* v. *McElrath*, 86 Cal. 449; 25 Pac. 16; *Williams* v. *Walker*, 66 Cal. App. 672; 226 Pac. 939; 11 C. J. 317, § 750, note 97. Since this debt of his son to petitioner arose by reason of petitioner's involuntary payment, as endorser, of his son's notes, he might have a bad debt deduction on account thereof, even though the debt was known to be worthless as soon as it arose. *Shiman* v. *Commissioner*, 60 Fed. (2d) 65; see *H. Rodney Sharp*, 38 B. T. A. 166; *Harold Guyon Trimble*, 6 T. C. 1231; *Warren Leslie, Sr.*, 6 T. C. 488.

Petitioner proceeds with his contention and argues that, since he reported his income on the cash basis and since his payment as endorser was by the execution of his own note, any deduction as a bad debt of the amount thereupon owed to him by his son would only become available to him when his own note was paid, citing *Eckert* v. *Burnet*, 283 U. S. 140, and *Helvering* v. *Price*, 309 U. S. 409.

We are of the opinion that petitioner's case breaks down before he gets to this argument. It is true that, when an endorser is called upon to make a payment of the obligation endorsed, a bad debt deduction (on account of the debt thereupon owed by the primary obligor to the endorser) may be available to the endorser even though the debt deducted as bad was worthless at the time when, technically, it ripened from a conditional obligation into a debt. But when it appears that there is a close relationship between the endorser and the primary obligor, such as that of father and son, that the parties have no reasonable expectation that the primary obligor will pay the obligation when it becomes due, or will be able to reimburse the endorser on account of the latter's payment of the obligation, and that all of the facts present in the transaction show the intention of the parties at the time of the endorsement to be that upon payment of the obligation by the endorser no real and enforceable debt shall result in favor

of the endorser, then the intention of the parties will prevail, no debt of the primary obligor to the endorser will be considered as having been created by the endorser's payment, and the entire transaction will be treated as in the nature of a gift.   See *Shiman* v. *Commissioner, supra.*

In the instant case the principal obligor was the endorser's son. He wished to go into a business requiring credit and capital, neither of which he had.   The father loaned or gave to the son both capital and credit.   The new business did not prosper.   Because the father desired to see the son continue in business, he endorsed the son's notes executed for the purposes of obtaining additional capital.   At that time the father made no investigation into the son's business or financial prospects.   All he knew was that the business was not prospering and that the son always needed more money.   After the father paid the notes thus endorsed, he made no effort to collect against his son the amount of his payment and he filed no claim on account thereof in the bankruptcy proceedings in which his son was later involved, nor did the son ever list such a debt as one of his liabilities or take any step indicating that he acknowledged the existence of this indebtedness.

Under the circumstances disclosed by the record in this case, we are of the opinion that the transaction in question is equivalent to one in which a father borrowed money from a bank and, in effect, made a gift of the proceeds to his son.   It will not, in our opinion, justify a bad debt deduction, since, on the facts shown, it is impossible for us to conclude that the petitioner and his son intended a debt to arise from petitioner's payments of his son's notes.   See *Charles J. Matthews*, 8 T. C. 1313.

In *D. W. Pierce*, 41 B. T. A. 1261, we permitted the deduction as a bad debt of amounts paid by a father on account of a guarantee of a son's obligation.   In that case, however, we pointed out (p. 1265) "that the petitioner's son was solvent by a safe margin at the time of the * * * guarantee," that the petitioner regarded the transaction "as sound from a business standpoint, and this regardless of the personal relationship" between him and his son, and that the evidence in that case pointed "conclusively to the fact that the petitioner intended to hold his son as a debtor in whatever amount he was required to pay on the guarantees." In the instant case the record before us requires a holding on all these points contrary to that reached in the *Pierce* case.

*Decision will be entered for the respondent.*