# C. L. DOWNEY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13051. Promulgated May 17, 1948.

*Maurice Walk, Esq.*, for the petitioner.
*J. L. Boughner, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in excess profits tax of $3,581.06 for 1942 and $3,152.64 for 1943, and a deficiency of $84.03 in declared value excess profits tax for 1943. The issues for decision are: (1) Whether the Commissioner erroneously disallowed, as borrowed invested capital for each year, $28,000 representing an alleged loan to the taxpayer by the Hannibal Chamber of Commerce; (2) whether the Commissioner erred in eliminating from the depreciable base, $25,000 made available to the petitioner by the Chamber of Commerce of the City of Hannibal, Missouri, for use in constructing its factory, which elimination reduced the deduction for depreciation by $500 for each year.

The facts have been stipulated.

The petitioner is an Ohio corporation. It entered into an agreement (hereinafter called the agreement) with the Hannibal Chamber of Commerce (hereinafter called the chamber) on April 2, 1941.

The agreement recited that the petitioner was located in Cincinnati, Ohio, but was desirous of changing its location and the chamber was endeavoring to have it locate its plant in Hannibal, Missouri. The parties agreed that the chamber would secure $28,000 by a popular subscription, $3,000 thereof to be used for the purchase of land to be transferred to the petitioner and $25,000 to be used to pay a part of the cost of the factory building to be erected on the property; the chamber would negotiate a loan of $25,000 for the petitioner, the loan to be secured by a first deed of trust upon the land and improvements; and the petitioner would thereupon erect a factory building costing not less than $50,000; and the petitioner would secure the

$28,000 by the execution of a promissory note and second deed of trust upon the real estate and improvements, payable to the chamber, the note to be due eight years from April 2, 1941, but provided, further, that "should the petitioner pay out to its officers and employees engaged in its Hannibal factory compensation of $500,000" over a period of seven and one-half years or less, "then said note shall be canceled and the second deed of trust shall be released of record"; provided, further, that the petitioner could fulfill its obligation and debt at any time by paying to the chamber 5 per cent of the difference between its pay roll to that date and $500,000, plus $3,000 for the lot; and provided, further, that should the petitioner fail to pay out the $500,000 in pay roll within the time prescribed, or to adopt the other method of fulfilling its obligation, or if it should fail to operate its plant for twelve consecutive months through its own fault, then the fee simple title to the real estate was to revert to the chamber, subject to the lien of the first deed of trust to secure the $25,000 loan.

The petitioner executed a document dated August 12, 1941, stating that on or before eight years after date it promises to pay to the chamber $28,000, with interest thereon from maturity, but "said note will be satisfied and considered paid" by the petitioner's compliance with its agreement with the chamber. It was also stated therein that the note was secured by a deed of trust of even date. The petitioner, on August 12, 1941, executed a deed of trust to the chamber covering the lot given to it by the chamber but subject to a prior deed of trust.

The petitioner's aggregate pay roll between the date of the agreement and the close of 1945 exceeded $500,000 and the so-called note and deed of trust were canceled by the chamber and returned to the petitioner at that time.

The Commissioner in determining the deficiences disallowed the $28,000 as equity invested capital and allowed no part thereof as borrowed capital.

The building erected by the petitioner pursuant to the terms of the agreement had an estimated life of 50 years from January 1942. The petitioner in its income tax return for 1942 claimed depreciation on the building, based upon a cost of $47,451.07. The Commissioner, in determining the deficiencies, eliminated $25,000 of the cost representing the amount received from the chamber without cost to the petitioner.

The petitioner contends that it is entitled to $28,000 of borrowed invested capital for each of the taxable years, representing an alleged loan of that amount to the taxpayer by the chamber. The pertinent statutory provisions are as follows:

SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year

shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust * * *.

\*     \*     \*     \*     \*     \*     \*

(b) BORROWED INVESTED CAPITAL.—The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day.

The petitioner is contending that the chamber loaned it $28,000, evidenced by a promissory note and secured by a second deed of trust Both parties agree that the so-called note and deed of trust are to be read in conjunction with the agreement.

The Commissioner argues that there was no "indebtedness" due from the petitioner to the chamber within the meaning of that word as used in section 719 (a) (1). He says that "indebtedness" implies an unconditional obligation to pay and an obligation can not be called a debt for this purpose if it is uncertain whether anything will ever be demandable by virtue of the contract, citing *Gilman* v. *Commissioner*, 53 Fed. (2d) 47; *Commissioner* v. *Park*, 113 Fed. (2d) 352; *Aetna Oil Co.* v. *Glenn*, 53 Fed. Supp. 961; *Canister Co.*, 7 T. C. 967; affd., 164 Fed. (2d) 579. He says further, that the inchoate or contingent obligation to pay was not evidenced by a note or deed of trust within meaning of those terms as used in section 719 (a) (1), because the two instruments do not represent the real obligation, which is found only in the contract itself; i. e., the so-called note, when read with the contract, was not a promise to pay a certain sum of money at a certain time unconditionally. *Journal Publishing Co.*, 3 T. C. 518; *Consolidated Goldacres Co.*, 8 T. C. 87; affd., 165 Fed. (2d) 542. Finally, he properly points out that, even if all of the provisions of section 719 (a) (1) were met, still no computation of borrowed capital would be possible on the present record, because the petitioner's indebtedness on any particular day would be dependent upon the total amount of wages paid by it up to that day and the record contains no evidence of those payments.

The agreement indicates that the $28,000 was not borrowed by the petitioner from the chamber. The money was raised by the chamber by popular subscription and was put into the construction of the plant as an inducement to the petitioner to locate and operate its plant in Hannibal. It was the hope and expectation of all parties that the $28,000 would never be repaid by the petitioner. They were not interested particularly in repayment; what they wanted was a successful operating plant in Hannibal, paying out substantial wages to residents of that place. Therefore, it was provided that the petitioner would never repay any part of the $28,000 if it established a plant

in Hannibal and paid out as much as $500,000 on its pay roll within seven and one-half years of the date of the agreement. It actually did those things and it never repaid any part of the $28,000. There was no obligation during the taxable years which could have been accrued for tax purposes. The Commissioner did not err in excluding the $28,000 from borrowed invested capital for those years.

The next contention of the petitioner is that $25,000 of the amount involved in the first issue was invested in its plant, a depreciable asset, and should be recognized as a part of the basis for the computation of a deduction for depreciation. Section 23 (l) (1) grants as a deduction a "reasonable allowance" for the depreciation of property used in the taxpayer's business. The purpose of that deduction is to return to the taxpayer, tax-free, from income, the cost of the exhausting asset to the taxpayer. *United States* v. *Ludey*, 274 U. S. 295. No deduction is proper if the depreciating asset costs the taxpayer nothing. *Detroit Edison Co.* v. *Commissioner*, 319 U. S. 98. Here the $25,000 in question was contributed by third parties to the chamber and went directly into the construction of the factory at no cost whatsoever to the petitioner. The intention and expectation of all interested parties was that the petitioner would not repay that amount. It paid nothing during the taxable years and, as a matter of fact, it never did repay the amount. Annual deductions to return that amount tax-free to the petitioner, as if it had been paid by the petitioner as a part of its cost of the plant, would be unreasonable, since they would tend to return an amount in excess of the actual cost to the petitioner of the depreciating asset. "The Commissioner was warranted in adjusting the depreciation base to represent the taxpayer's net investment." *Detroit Edison Co.* v. *Commissioner, supra.*

*Decision will be entered for the respondent.*