EVANS CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE RESPONDENT.

Docket No. 31024. Promulgated July 23, 1952.

*Morton Pepper, Esq.,* for the petitioner.
*Robert R. Blasi, Esq.,* for the respondent.

782

OPINION.

Arundell, *Judge:* In 1937 the petitioner advanced to his wife a sum of money to purchase the stock of a corporation owning the newspaper with which she was associated. The wife was obliged to repay the sum only if the newspaper earned sufficient profits and she received sufficient dividends to make repayment. As a result of unprofitable operations for several years and the liquidation and dissolution of the corporation in 1943, the petitioner's wife was no longer contingently obligated in 1943 to repay the sum advanced. The petitioner claims the advance was a nonbusiness debt that became worthless in 1943 and seeks a carry-over loss from that year to 1945. Section 23 (k) (4) and sections 117 (d) (2) and (e) (1) of the Internal Revenue Code.[1]  See Regulations 111, section 29.23 (k)–6 and section 29.117–2 (c).

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
  * * * * * * *
  (k) BAD DEBTS.—
  * * * * * * *
    (4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security, as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
SEC. 117. CAPITAL GAINS AND LOSSES.
  * * * * * * *
  (d) LIMITATION ON CAPITAL LOSSES.—
  * * * * * * *
    (2) OTHER TAXPAYERS.—In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of [or] $1,000, whichever is smaller. * * *
  (e) CAPITAL LOSS CARRY-OVER.—
    (1) METHOD OF COMPUTATION.—If for any taxable year beginning after December 31, 1941, the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the five succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose and such succeeding taxable year. For purposes of this paragraph a net capital gain shall be computed without regard to such net capital loss or to any net capital losses arising in any such intervening taxable years.

It is elementary that among the essential prerequisites for a bad debt deduction are a clear showing that the parties intended to create a debtor-creditor status and further that a debt in fact exists. *Estate of Carr V. Van Anda*, 12 T. C. 1158, affd. per curiam 192 F. 2d 391; *C. B. Hayes*, 17 B. T. A. 86; *Shiman* v. *Commissioner*, 60 F. 2d 65; *Montgomery* v. *United States*, 23 F. Supp. 130, certiorari denied 307 U. S. 632; *E. J. Ellisberg*, 9 T. C. 463; *Luke & Fleming, Inc.*, 1 B. T. A. 12; *Emil Weitzner*, 12 B. T. A. 724. In addition, intra-family transactions are subject to rigid scrutiny and transfers from husband to wife are presumed to be gifts unless there is an affirmative showing that there existed at the time of the transaction a real expectation of repayment and an intent to enforce collection. *Estate of Carr V. Van Anda, supra; Jacob Grossman*, 9 B. T. A. 643; *Elizabeth Hetherington*, 20 B. T. A. 806; *Helen E. Leatherbee*, 34 B. T. A. 196; *Young, Inc.* v. *Commissioner*, 120 F. 2d 159.

The funds transferred by the petitioner to his wife enabled her to gain control of the newspaper with which she was associated. This control helped to assure her position from which she received a salary of approximately $6,000 to $7,000 annually and also made it possible to continue the newspaper in its then existent point of view. Aside from an indirect financial benefit in having his wife continue to receive this salary and the satisfaction of assisting her in her professional interest, the petitioner stood to gain nothing from the transaction.

The petitioner precluded recourse to his wife's salary payments and thereby lessened the likelihood of repayment by agreeing that she need not repay the sum until the newspaper earned sufficient profits and she received sufficient dividends. The salary payments were the wife's only significant source of income and the possibility that the newspaper would begin earning profits instead of incurring losses as it had in the immediate past was speculative at best.

Moreover, there was no note or other written evidence of the transaction; there was no interest to be paid, and there was no fixed date for repayment even upon the happening of the contingency. The petitioner made no effort to collect and his wife made no repayments even though she continued in the employ of the newspaper and since 1937 had been advanced to the position of editor. In these circumstances we do not have the arms' length dealings that may normally give rise to a debtor-creditor relationship.

Even if we assume that an obligation existed, such obligation would not have constituted a debt since admittedly it was subject to a contingency that never occurred. A debt both under the principles of general law and within the meaning of section 23 (k) of the Internal Revenue Code does not arise where the obligation to repay

is subject to a contingency and the contingency has not occurred. 26 C. J. S., Debt, pp. 4–5; *Dunn* v. *Neustadtl*, 72 Misc. 1, 129 N. Y. S. 161; *Alexander & Baldwin, Ltd.* v. *Kanne*, 190 F. 2d 153; *Commissioner* v. *McKay Products Corp.*, 178 F. 2d 639, dismissed 339 U. S. 961; *Bercaw* v. *Commissioner*, 165 F. 2d 521; *Milton Bradley Co.* v. *United States*, 146 F. 2d 541. Cf. *Deputy* v. *DuPont*, 308 U. S. 488. See *New York Life Ins. Co.* v. *Universal Life Ins. Co.*, 88 N. Y. 424.

As held in *Bercaw* v. *Commissioner, supra,* "A deduction for a bad debt under section 23 (k) (1) is allowable only if the obligation to pay is certain and actually in existence. 'The term "indebtedness" as used in the Revenue Act implies an unconditional obligation to pay * * *.' " The principle upon which this holding is based is summarized as follows: "Every debt must be either solvendum in praesenti, or solvendum in futuro—must be certainly, and in all events, payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a 'debt,' since debt is a liquidated demand, the payment of which is not dependent on the happening of any contingency or the performance of any condition. While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term debt being opposed to 'liability' when used in the sense of an inchoate or contingent debt." 26 C. J. S., *supra.*

This definition of a debt or an indebtedness has been uniformly applied in cases dealing not only with deductions under section 23 (k), but also cases involving interest deductions and the meaning of borrowed invested capital as contained in section 719 (a) (1). *Gilman* v. *Commissioner*, 53 F. 2d 47, affirming 18 B. T. A. 1277; *C. L. Downey Co.*, 10 T. C. 837; *Fraser-Smith Co.*, 14 T. C. 892. In addition, it has been recently reaffirmed in *Alexander & Baldwin, Ltd.* v. *Kanne, supra,* wherein the court stated: "Here where there is no certainty that the debtor-creditor relationship ever will arise, the instant promise to pay money does not create a deductible debt."

*Rassieur* v. *Commissioner*, 129 F. 2d 820, and *Clay Drilling Co. of Texas*, 6 T. C. 324, cases relied on by the petitioner, are not in conflict with what we say here. In *Rassieur* v. *Commissioner, supra,* the issue was ascertainment of worthlessness, and although the debtor therein was not subject to personal liability, the liability was absolute and not contingent. In *Clay Drilling Co. of Texas, supra,* the issue was whether debts were canceled because the manner of their payment was subsequently restricted and the debtors were freed of personal liability.

Under these circumstances we find no reason for departing from the sound and firmly established rule followed in the numerous cases cited above. We, therefore, hold that there was no debt owing to

the petitioner by his wife and as a result no deduction for worth-lessness is allowable under section 23 (k) (4) of the Internal Revenue Code.

*Decision will be entered for the respondent.*