ARTHUR MAYHEW AND ESTATE OF DOROTHY MAYHEW, DECEASED, ARTHUR MAYHEW, EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mayhew v. Commissioner
Docket No. 10342-92
United States Tax Court
T.C. Memo 1994-310; 1994 Tax Ct. Memo LEXIS 313; 68 T.C.M. (CCH) 25; July 6, 1994, Filed *313 Decision will be entered for respondent. For petitioners: Eli Blumenfeld. For respondent: Mark A. Weiner. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651
6653(a)(1)
6653(a)(2)
6661
1984
$ 12,719
$ 3,765.80
$ 2,273.95
50 percent
$ 3,179.75
of the interest
due on the entire
deficiency
The issues for decision are whether petitioners are entitled to a bad debt deduction; whether petitioners are entitled to deduct certain expenses claimed on Schedule C; and whether petitioners are liable for additions to tax under sections 6651(a), 6653(a), and 6661. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioners resided in Pasadena, California. Arthur Mayhew (petitioner) *314 has been a certified public accountant (C.P.A.) for over 25 years. In addition to his accounting practice, petitioner purchased loan contracts from used car dealers who loaned money to individuals purchasing automobiles. The loans were secured by the automobiles. One of the automobile loans that petitioner purchased was a debt owed by Arthur Snell (Snell). In 1981, Snell borrowed $ 35,611.20 from Southern California Equipment, Inc., to purchase a bus for the operation of a tour bus business. Petitioner and two other corporations were the owners of Southern California Equipment, Inc. Snell signed an installment note providing for monthly payments of principal and interest of $ 741.90, and he also signed a security agreement. Meanwhile, Snell opened a restaurant with funds supplied solely by petitioner. During 1982 and 1983, Snell was unable to pay several debts. Snell sought money from petitioner because he was unable to get a bank loan. Petitioner made several payments by check to, or on behalf of, Snell totaling $ 16,682.22 in 1982 and $ 22,417.49 in 1983. These amounts included the payment of rent for Snell's residence, payments on other personal loans owed by Snell, *315 and payment of expenses associated with Snell's restaurant. Snell signed several promissory notes for amounts totaling $ 24,701.07 in 1982 and $ 15,995.15 in 1983. Each of the promissory notes signed by Snell stated that Snell promised to pay petitioner a stated amount plus 18-percent interest on demand. None of these promissory notes was secured. The oral understanding between petitioner and Snell regarding repayment was that Snell would repay petitioner when he had funds available. There was no written repayment schedule. Snell did not make any payments on the 1982 and 1983 promissory notes. Sometime before 1984, Snell's tour bus business closed, and the bus was repossessed by Southern California Equipment, Inc. Also, sometime in 1983 or 1984, Snell's restaurant went out of business. Snell's restaurant equipment was put in a public storage facility. Snell did not have sufficient funds to pay for the storage of this equipment, so petitioner made several payments to the storage facility for the storage charges. Eventually, the public storage facility conducted a forced sale of the restaurant equipment. Sometime around 1984, Snell filed a personal injury lawsuit seeking *316 about $ 50,000 in damages. Petitioner advanced funds to the attorney who was handling the suit for Snell. In 1984 or 1985, the lawsuit was terminated without any award to Snell. During 1984, Snell performed services for petitioner that included delivering tax returns to Palm Springs, California, and selecting antique automobiles for petitioner to purchase. Snell was not compensated for these services but was reimbursed for mileage or gas expenses. Near the end of 1984, Snell told petitioner that he was not sure if he would ever be able to pay petitioner the "large sum of money" that he owed petitioner. Petitioner did not initiate any legal action with respect to the promissory notes and did not refer the matter to a collection agency. Petitioners filed a Schedule C with their 1984 income tax return on which they stated that petitioner was in the "financing" business. On Schedule C, petitioners reported gross receipts of $ 2,357. They claimed a $ 36,140 bad debt deduction. They also deducted $ 1,167 for car and truck expenses, $ 2,275 for repairs expense, and $ 1,738 for miscellaneous expense. The bad debt deduction represented the 1982 and 1983 advances to Snell for which *317 petitioners had canceled checks. The car and truck expenses included expenses for a 1962 Mercury and payments to Snell for mileage for his trips to Palm Springs. The repairs expense also related to a 1962 Mercury. The miscellaneous expenses included payments for storage of Snell's restaurant equipment, storage of the bus repossessed by Southern California Equipment, Inc., and storage of Persian rugs that petitioner held for investment. Respondent disallowed the deductions and determined that the "business" had no gross receipts in 1984. Petitioners filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, on which they estimated their 1984 income tax liability to be $ 24,000. On August 2, 1985, petitioners filed their 1984 income tax return, which indicated a total tax of $ 32,760. Respondent determined that petitioners' total tax was $ 45,479. OPINION Bad Debt Expense
Section 166(a) provides for a deduction for business debts that become worthless during the taxable year. In the case of nonbusiness bad debts, the loss is deductible as a loss from the sale or exchange of a capital asset held for not more than 6 months. *318 Sec. 166(d)(1)(B). Petitioners contend that petitioner was in the financing business, that the advances made to Snell in 1982 and 1983 were loans that became worthless in 1984, and thus that they are entitled to a business bad debt deduction. Alternatively, petitioners contend that they are entitled to a nonbusiness bad debt deduction under section 166(d)(1)(B). Respondent contends that petitioners have not demonstrated that the 1982 and 1983 advances to Snell were loans. Respondent further contends that, even if the advances were bona fide loans, petitioners have not demonstrated that petitioner was in the financing business or that such loans became worthless in 1984. "Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs.Petitioner has the burden of establishing that the advances were bona fide loans and that they became worthless in 1984. Rude v. Commissioner, 48 T.C. 165, 172 (1967). Whether a bona fide debtor-creditor relationship *319 exists is a question of fact to be determined upon a consideration of all the facts and circumstances. Fisher v. Commissioner, 54 T.C. 905, 909 (1970). An essential consideration here is whether the payments to Snell were made with a reasonable expectation, belief, and intention that petitioner would be repaid in light of the economic realities of the situation. Id. at 909-910. Among the common factors that are considered in determining whether there was a reasonable expectation, belief, and intention of repayment are: (1) Whether a note or other evidence of indebtedness exists, Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953); (2) whether interest is charged, id.; (3) whether there is a fixed schedule for repayments, id.; (4) whether any security or collateral is requested, Zimmerman v. United States, 318 F.2d 611, 613 (9th Cir. 1963); (5) whether a demand for repayment has been made, Montgomery v. United States, 87 Ct. Cl. 218, 23 F. Supp. 130 (1938); *320 (6) whether any repayments have been made, Estate of Ames v. Commissioner, a Memorandum Opinion of this Court dated Feb. 7, 1946; and (7) whether the borrower was solvent at the time of the loan, Jewell Ridge Coal Corp. v. Commissioner, 318 F.2d 695, 699 (4th Cir. 1963), affg. T.C. Memo. 1962-194. Petitioners contend that the advances were bona fide loans because there was a promissory note for each payment from petitioner to Snell; interest was charged on each payment; there was a repayment schedule, which was a demand schedule; numerous demands for repayment were made and one letter was sent requesting repayment; petitioner's records reflected the transactions as loans; Snell made repayments on earlier loans; and there was no evidence that Snell was insolvent when the advances were made. In many respects, there are inconsistencies between petitioner's testimony and Snell's testimony. Petitioner testified that Snell repair the car loan that petitioner had purchased. However, Snell testified that he did not repay that loan. Petitioner also testified that Snell repaid other loans not at issue here, but Snell testified *321 that he did not know whether he received other loans from petitioner, and petitioners presented no evidence of such loans or repayments. Consequently, we are not persuaded that Snell made repayments on earlier loans. Petitioner also contends that there is no evidence that Snell was insolvent when the advances were made. However, petitioner's records show that petitioner made many of the payments at issue directly to third parties, and Snell testified that these payments were made because he owed money to these third parties and could not make the payments as they became due. The payments that Snell was unable to make included rent for his home, personal loan payments, and expenses associated with the restaurant. Snell testified that petitioner made the 1982 and 1983 advances because he could not obtain a loan from a bank. The record indicates that, when the advances were made in 1982 and 1983, Snell was probably insolvent. See Fisher v. Commissioner, supra at 910-911. Petitioners concede that petitioner was taking a risk in making continued loans to Snell, but they contend that the additional advances were necessary to protect prior loans *322 that they made to Snell. Petitioners contend that the facts here are similar to those in Rodgers v. Commissioner, T.C. Memo. 1985-220, where a taxpayer, who had made advances to her husband to aid his business, advanced an additional $ 25,000 because he did not have sufficient funds to meet the payroll. That taxpayer was led to believe that her husband's business would fail if the additional advance was not made. Ultimately, the husband was unable to repay these loans. We stated that "With hindsight it is apparent that financially petitioner would have been better off if she had not made any of the advances to Smith. However, the advances must be viewed under the circumstances which existed at the time they were made." Id. We held that the advances in Rodgers were loans because we were satisfied that, when they were made, the taxpayer believed that she was making advances to a successful businessman who had assets in excess of $ 1,000,000 and who would repay her within 6 months. Here, we have no reason to believe that, when the advances were made, petitioner thought that Snell had assets or business skills that would enable him to repay *323 petitioner. There is no evidence that Snell owned any assets or that he was successful in past business activity. Petitioner advanced money to Snell and his third-party creditors for Snell's business and personal expenses when Snell did not have the funds to pay such expenses. Moreover, the record reflects that Snell's tour bus business failed and that the bus was repossessed by a corporation owned in part by petitioner sometime before 1984. Thus, this business failure and repossession occurred either before or during the 1982-1983 "loan" period. Despite this business failure and the lack of repayments, petitioner continued to make payments to Snell and his creditors through 1984 when he transferred funds to Snell's attorney and made payments to the storage facility to store the restaurant equipment. We are not persuaded that petitioner, even without the benefit of hindsight, could have reasonably believed that the continued advances to Snell during 1982 and 1983 would be repaid. Petitioners cite Goldstein v. Commissioner, T.C. Memo. 1980-273; Rodgers v. Commissioner, supra; and Hunt v. Commissioner, T.C. Memo. 1989-335, *324 for their argument that petitioner's failure to require the advances to be secured by collateral should not preclude the advances from being considered as loans. In Goldstein, we held that transfers made to trusts were bona fide loans because, among other things, the individuals making the transfers had a "hybrid type of security interest". Although the transfers in Rodgers and Hunt were not secured by collateral, there were other circumstances there that persuaded us that the taxpayers had a reasonable expectation and belief that they would be repaid. In Rodgers, we were satisfied that the taxpayer believed that she was making advances to a successful businessman who would be able to repay her shortly. In Hunt, some of the transferees had made partial repayments on the loans at issue, and all of the transferees had repaid all previous loans. Moreover, in that case, we held that the transfers that were made after the transferees had a negative net worth and after the taxpayer ceased considering whether the transferee could make repayment were not bona fide loans. Petitioners admit that petitioner took no legal action to enforce the purported debt owed to *325 him, but petitioner contends that he made several demands for repayment, including a letter written to Snell. Petitioners did not demonstrate the timing, nature, or frequency of any such demands. In response to the question of whether he had demanded repayment from Snell in writing, petitioner testified that "I think at one time I sent him a letter, but I hadn't personal contact with him and requested payment, but I think there was one letter to him. That's all. And I don't know where that letter is." Snell testified that petitioner "just wanted to know when I was going to be able to pay it, pay something on the loans." On this record, we are not satisfied that petitioner made multiple or definite demands for payment. The advances at issue here were represented by written promissory notes providing for interest at a stated rate and payment on demand. However, the determination of whether payments constitute bona fide loans depends upon all the facts and circumstances and, generally, no one fact is determinative. John Kelley Co. v. Commissioner, 326 U.S. 521 (1946). We agree with respondent that petitioners have not established that petitioner *326 advanced funds to Snell with a reasonable expectation, belief, and intention that he would be repaid. Petitioner's advances to Snell are not satisfactorily explained, and much of petitioner's claim is improbable. On this record, we hold that the advances were not bona fide loans. As a result, we do not consider whether petitioners have proven that the "loans" became worthless in 1984 or whether petitioner was in the "financing" business. Other Schedule C Expenses
Respondent contends that petitioners are not entitled to Schedule C deductions for car and truck expenses of $ 1,167, repairs expenses of $ 2,275, and miscellaneous expenses of $ 1,738. On brief, petitioners concede that the miscellaneous expenses include payments for the storage of Snell's restaurant equipment that should be treated as additional loans that are not deductible except as a bad debt expense. These payments were made after, and in addition to, the 1982 and 1983 payments that were accompanied by promissory notes. Having held that the 1982 and 1983 payments were not bona fide loans, we also conclude that these restaurant equipment storage payments made in 1984 were not loans, and, thus, we hold that *327 these payments are not deductible as bad debts. Petitioners make no arguments with respect to the payments for storage of the Persian rugs. Petitioners also concede that the miscellaneous expenses include payments on behalf of Southern California Equipment, Inc., for storage charges for the tour bus that are not deductible by petitioners. Accordingly, petitioners are not entitled to the $ 1,738 miscellaneous expense. With respect to the car and truck and repairs expenses, petitioners contend that petitioner was in the business of holding collectible cars for sale, that these expenses are associated with that business, and thus that they are deductible as business expenses. The only evidence regarding petitioner's collectible car business is his testimony that he "was going to go into the car restoration business", Snell's testimony that he used petitioner's money to purchase cars for petitioner, and documents reflecting expenses relating to a 1962 Mercury. Petitioners contend that there is no evidence demonstrating that petitioner was not in the business of holding collectible cars for sale, that respondent did not ask any questions on this issue, and thus that the record supports *328 that petitioner was in the business of holding collectible cars for sale. We disagree. Deductions are a matter of legislative grace, and petitioners bear the burden of proving their entitlement to any deduction claimed on the return. INDOPCO, Inc. v. Commissioner, 503 U.S.    , 112 S. Ct. 1039, 1043 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners have not proven that the car and truck and repairs expenses were incurred in relation to an existing trade or business, and thus they are not entitled to a deduction for such expenses. Section 6651
Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date, which date is determined with regard to any extension of time for filing. In this case, respondent concedes that petitioners were granted an automatic extension of time within which to file their 1984 return and that they filed this return within such extended period. Because respondent did not declare the Form 4868 to be void or state in the notice of deficiency that the extension was invalid, petitioners contend that *329 they are not liable for the section 6651(a)(1) addition to tax. Respondent contends that petitioners' extension should be voided under Crocker v. Commissioner, 92 T.C. 899 (1989). In Crocker, we held that respondent may void automatic extensions of filing deadlines previously obtained where the taxpayer's Form 4868 is invalid because of a failure properly to estimate tax liability. Id. at 911. We further held that a taxpayer fails properly to estimate his tax liability when he fails to make a bona fide and reasonable estimate of his tax liability based on the information available to him. Id. at 908. See also Clayton v. Commissioner, 102 T.C.     (1994). Respondent notes that the Form 4868 that was filed by petitioners indicated a tax liability of $ 24,000 but that the return that was filed indicated a tax liability of $ 32,760, and respondent, in the notice of deficiency, determined a tax liability of $ 45,479. As a result, respondent contends that petitioners made an unreasonable estimate of their tax liability because they underestimated their "true tax liability" by *330 $ 21,479. Respondent contends that petitioners did not present evidence that their estimate was a good faith, bona fide estimate. Petitioners contend that they made a reasonable estimate of their tax liability on the Form 4868 because Crocker only requires "a rough estimate and not one of exactitude." Petitioners' bare assertion that they made a good faith effort to estimate their tax does not satisfy their burden of proof. The record does not contain any of the facts surrounding the calculation of petitioners' estimated 1984 tax liability of $ 24,000. Petitioner's reported liability was almost 35 percent higher than their estimate. The disallowance of the bad debt expense and of the other Schedule C expenses may account for part of the actual difference, but petitioners' mistaken belief that they were entitled to such deductions does not constitute reasonable cause for failure to make a proper estimate. See Shomaker v. Commissioner, 38 T.C. 192, 202 (1962); Arnaiz v. Commissioner, T.C. Memo. 1992-729. Accordingly, we hold that petitioners are liable for the section 6651(a) addition to tax. Section 6653(a)
*331 Section 6653(a)(1) provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for a further addition to tax in the amount of 50 percent of the interest payable on the portion of any underpayment of tax that is attributable to negligence or intentional disregard of rules or regulations. Negligence, as used in section 6653(a), is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners contend that they were not negligent in deducting the bad debt expense and other expenses claimed on Schedule C because respondent allowed other deductions claimed on Schedule C and because "the evidence clearly shows" that the advances were loans. The presence of correct deductions on a tax return does not negate negligence with respect to erroneous ones. The evidence shows that petitioner could not have reasonably believed that Snell would be able to repay *332 the "loans". Moreover, petitioners indicated on Schedule C that petitioner was in the "financing" business, yet, on that Schedule C, petitioners claimed deductions unrelated to a "financing" business, including an alleged collectible car business expense; storage expenses incurred on behalf of Southern California Equipment, Inc.; and storage expenses for petitioner's Persian rugs. We hold that petitioner, a C.P.A. for over 25 years, was negligent in claiming the bad debt deduction and the other disallowed Schedule C deductions and, thus, that petitioners are liable for the additions to tax under section 6653(a)(1) and (2). Section 6661
Section 6661(a) provides for an addition to tax of 25 percent of the underpayment of tax attributable to a substantial understatement of income tax. Section 6661(b)(2)(B)(i) provides for a reduction of the amount of the understatement by that portion of the understatement that is attributable to the tax treatment of any item if there is or was substantial authority for such treatment. Section 6661(b)(2)(B)(ii) provides for a reduction of the amount of the understatement where the relevant facts affecting the tax treatment of an item are adequately *333 disclosed in the return or in a statement attached to the return. Section 6661(c) provides that the Commissioner may waive all or any part of the section 6661 addition to tax upon a showing that the taxpayer had reasonable cause for the understatement and acted in good faith. The denial of a waiver is reviewable by the Court on an abuse-of-discretion basis. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). Petitioners argue that substantial authority exists for their bad debt deduction by asserting that the cases cited in their brief illustrate substantial authority. We have previously concluded that the cases upon which petitioners rely are materially distinguishable, and thus those cases do not constitute substantial authority. Antonides v. Commissioner, 91 T.C. 686 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Petitioners also contend that they made adequate disclosure on their return because they apprised respondent of the nature of the potential controversy by indicating that petitioner was in the financing business and by showing the "worthless debt" as a business bad debt deduction. *334 Petitioners' mere claim of a bad debt deduction on Schedule C, without any supporting explanation, does not provide respondent with sufficient information to identify the potential controversy involved here, namely, whether the advances to Snell were bona fide loans. Schirmer v. Commissioner, 89 T.C. 277, 286 (1987). Petitioners also argue that respondent's denial of a waiver under section 6661(c) was an abuse of discretion. We have previously concluded that petitioners' negligence caused the understatement; thus the denial of a waiver under section 6661(c) was appropriate. Accordingly, we conclude that petitioners are liable for the section 6661 addition to tax. Decision will be entered for respondent.