T.C. Summary Opinion 2001-176

UNITED STATES TAX COURT

ROBERT FEDEWA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14639-99S.                    Filed November 21, 2001.

<u>Lawrence P. Schweitzer</u>, for petitioner.

<u>Kimberly J. Webb</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,

subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In a notice of deficiency, respondent determined that petitioner is liable for deficiencies in Federal income taxes for the tax years 1994 and 1995 in the amounts of $3,014 and $31,949, respectively. Respondent also determined accuracy-related penalties under section 6662(a) for the tax years 1994 and 1995 in the amounts of $603 and $6,343, respectively.

After concessions made by petitioner,[1] the issues for decision are: (1) Whether petitioner is entitled to deduct on his 1994 Federal income tax return his pro rata share of partnership loss attributable to a bad debt, and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a) for the tax years 1994 and 1995.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Dewitt, Michigan.

---

[1] Petitioner concedes all adjustments to income in the notice of deficiency, except the disallowed partnership loss deduction of $65,419 and accuracy-related penalties which are the issues before us. There appears to be a mathematical error in the partnership loss deduction amount; the correct amount should be $64,559.

Background

In 1976, petitioner and his brother, James Fedewa, and cousin, Bernard Fedewa, formed a partnership known as BBJ Investments (BBJ). BBJ is a Michigan partnership in the business of acquiring and operating residential real estate. Initially, the partnership was owned equally by the three partners. On July 6, 1987, James Fedewa relinquished his one-third interest in BBJ to petitioner. Since 1987, petitioner has held a two-thirds interest in BBJ. Petitioner was also either a shareholder or partner in Fedewa Enterprises, Fedewa Builders, Fedewa Realty World, and Construction Redi-Mix (collectively the related entities). The related entities were involved in the development and construction of residential and commercial properties through the 1980s.

In 1975, BBJ purchased land to build a 50-unit apartment complex known as North Scott Villa. In order to complete the North Scott Villa project, Bernard E. Fedewa, James R. and Mary Ann Fedewa, and Robert E. and Julia I. Fedewa, as the "borrower" secured a $712,500 loan bearing 8.5-percent interest (FmHA loan), from the Department of Agriculture Farmers Home Administration (FmHA) in 1975. Pursuant to the loan agreement, the borrower was required to provide annual budgets, annual operating plans, and maintain books and records relating to the housing project's financial affairs, causing such books and records to be audited

at the end of each fiscal year. The borrower was also required to maintain various reserve or escrow accounts (collectively reserve accounts) so long as the loan obligation remained unsatisfied. In the event the borrower failed to comply with the terms of the loan agreement, the Government could declare the entire amount of the loan obligation immediately due and payable, and, enforce all other available remedies. The Government also had an option to waive any provision of the loan agreement.

On January 1, 1978, James Fedewa, on behalf of Fedewa Builders, Inc., executed a promissory note for $28,056.41 to BBJ (1978 promissory note). The 1978 promissory note, bearing 8-percent interest, did not state a due date.[2] Fedewa Builders and Fedewa Enterprises ceased business operations in 1987.

In 1979, Touche Ross & Co., BBJ's certified public accountants, conducted an audit of BBJ's books and records. On its books and records appeared an asset account of $109,540 for notes receivable due from two related entities.[3] Despite the related party transaction, Touche Ross & Co. gave BBJ a "clean" financial opinion. However, beginning in 1982 and through 1988, BBJ failed to obtain "clean" financial opinions and received

---

[2]     We note that the photocopy of the 1978 promissory note is illegible and testimony by petitioner's sole witness, Michael A. Comito, did not provide such information.

[3]     It is unclear which two related entities generated the notes receivable referenced in the Touche Ross & Co. audit.

"disclaimer" opinions. FmHA raised concerns about BBJ's failure to maintain the reserve accounts required under the FmHA loan agreement. FmHA refused to waive BBJ's noncompliance under the loan agreement. In 1989, FmHA began foreclosure proceedings against BBJ for its failure to maintain adequate reserve accounts.

In 1994, Yeo and Yeo, P.C., certified public accountants, audited the North Scott Villa Apartments project for years 1992 and 1993. Yeo and Yeo provided a disclaimed opinion based on the following:

> As discussed in Note 6 to the financial statements, North Scott Villa Apartments is in violation of certain covenants of its loan agreements with the United States Department of Agriculture Farmers Home Administration. The lender has the option to demand immediate payment of the mortgage note. On January 9, 1989, the owners of North Scott Villa Apartments were notified by the Untied [sic] States Department of Agriculture Farmers Home Administration of the acceleration of the mortgage note and immediate payment of the mortgage note. * * * The financial statements do not include any adjustment relating to the recoverability and classification of recorded assets and liability amounts that might be necessary should North Scott Villa Apartments be unable to continue in existence.

Petitioner timely filed his 1994 Federal income tax return wherein he reported $64,559 reflecting his pro rata share of partnership loss attributable to a business bad debt. Petitioner claims that the bad debt deduction is attributable to uncollected accounts receivable due from the following entities:

| | |
|---|---|
| Fedewa Enterprises | $20,638 |
| Fedewa Realty World | 435 |
| Construction Redi-Mix | 3,229 |
| Fedewa Builders | 72,371 |
| FCC | 165 |
| Total | $96,838[1] |

1  Petitioner's pro rata share of the accounts receivable is $64,559 based upon his two-thirds interest in BBJ.  (2/3 X $96,838 = $64,559)

The following is a schedule of BBJ's notes receivable ledger from 1976 through 1988:

| Year | Notes Receivable Principal |
|---|---|
| 1976 | $5,008.92 |
| 1977 | 32,956.41 |
| 1978 | 55,022.53 |
| 1979 | 109,540.00 |
| 1980 | 105,495.00 |
| 1981 | 91,794.00 |
| 1982 | 87,942.00 |
| 1983 | 87,895.00 |
| 1984 | 96,588.00 |
| 1985 | 96,838.00 |
| 1986 | 96,838.00 |
| 1987 | 96,838.00 |
| 1988 | 96,838.00 |

No payments of interest or principal were received after 1984. Petitioner could not explain the origin of the initial $5,008.92 note receivable in 1976.  The 1978 note receivable is reflected in the 1977 year-end amount listed above.  Besides the 1978 note receivable, there is no documentation memorializing any additions to principal or income and/or principal paid.  Moreover, the record does not provide a description of the surrounding circumstances or the purpose for the increases in the notes receivable account.

In the notice of deficiency, respondent disallowed for taxable year 1994 petitioner's partnership loss deduction of $64,559 attributable to his pro rata share of a business bad debt.[4] Respondent also determined for taxable years 1994 and 1995 accuracy-related penalties on the business bad debt and other issues petitioner has conceded.

Discussion

Section 166(a) generally allows a deduction for bona fide debts that become wholly or partially worthless within the taxable year. A business bad debt is fully deductible from ordinary income. Sec. 166(d)(1). A bona fide debt "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. Whether the parties actually intended the transactions to be loans depends on whether the advances were made "with a reasonable expectation, belief and intention that they would be repaid." Goldstein v. Commissioner, T.C. Memo. 1980-273.

The objective indicia of a bona fide debt includes whether a note or other evidence of indebtedness existed and whether interest was charged. Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953). We also consider the existence of security or collateral, the demand for repayment or

---

[4]    See supra note 1.

a fixed schedule for repayment, records that may reflect the transaction as a loan, and the borrower's solvency at the time of the loan. Id. at 783-784. The key factor is whether the parties actually intended and regarded the transaction as a loan. Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), affd. per curiam 192 F.2d 391 (2d Cir. 1951).

Respondent contends that petitioner failed to substantiate the amount of the purported business bad debt and to demonstrate that such debt was bona fide. Petitioner asserts that the notes receivable were substantiated by the 1987 promissory note, the 1980 Touche Ross & Co. audit report, and the 1994 Yeo and Yeo audit report. We disagree.

At trial petitioner produced the $28,056.41 promissory note signed by James Fedewa on January 1, 1978. Although the 1978 promissory note bore interest of 8 percent, the note did not provide a discernable due date; thus, we find the enforcement or demand of repayment on this note highly suspect. Furthermore, petitioner failed to provide any credible evidence to establish the origin of the $5,008.92 note receivable in 1976, to which principal the 1978 promissory note added, or the subsequent increases from 1978 through 1984. Although the origin of the notes receivable is unclear, petitioner does not dispute that the purported debt in issue arose from related party transactions. The record is devoid of any helpful information as to the

creation, purpose, or payment on the notes receivable principal balance from 1976 through 1985.

We also find petitioner's reliance on the audit reports of Touche Ross & Co. and Yeo and Yeo misplaced.  These reports cover a span of over a decade and clearly state that the auditors relied on information provided by, and exclusively in the control of the owners.  There is no information in the auditing firm's reports that they made an independent verification of the notes receivable account.

Likewise, FmHA's recognition of the notes receivable debt is inapposite to the primary issue of substantiation.  The FmHA loan is not the subject of the bad debt for which petitioner is claiming a partnership loss deduction in this case.  Pursuant to the loan agreement, the borrower must maintain certain reserve accounts while the loan obligation remained outstanding. According to FmHA, petitioner and the other borrowers failed to maintain these accounts.  Although FmHA began foreclosure proceedings for the failure to maintain adequate reserve accounts, FmHA did not attempt collection on the notes receivable.  FmHA was not a party to any of the transactions that gave rise to the underlying debt in issue.  FmHA's interest focused on the funding of the reserve accounts, from whatever source.

Based upon the above, we find that the balance in the notes

receivable accounts was not verified and further does not constitute a bona fide debt. Accordingly, petitioner is not entitled to the partnership loss deduction during the years in issue. Respondent is sustained on this issue.

## Accuracy-Related Penalty

Section 6662(a) imposes an accuracy-related penalty of 20 percent of the portion of the underpayment which is attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c).

On the basis of the record, we find that petitioner has failed to demonstrate that he was not negligent and did not disregard rules or regulations. We hold that petitioner is liable for the accuracy-related penalty under section 6662(a) for each year in issue.

We have considered all arguments by the parties, and, to the extent not discussed above, conclude that they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.